MILES *v*. BOARD OF SUPERVISORS SCOTT COUNTY.

Division A. Nov. 19, 1951.

No. 38093 (55 So. (2d) 157)

**W. W. Pierce,** for appellant.

Wm. C. Thompson, for appellee.

570

**McGehee, C. J.**

On July 25, 1950, an election was held in Scott County on the proposition of prohibiting the transportation, storage, sale, receipt or manufacture of wine and beer in the county, as provided for under Section 10208, Code of 1942, Chapter 171, Laws of 1934, Chapter 224, Laws of 1942. The election resulted in 1,814 votes being cast in favor of the exclusion and 994 votes against the same.

The appeal here from the final order of the board of supervisors which put into effect the result of the election has raised the questions (1) of whether Section 3283, Code of 1942, became operative in the instant case so as to render it necessary for the board of supervisors to have held the election instead of the same being conducted by the election commissioners, and for the reason that the board in its order directing the election to be held had adjudicated that the board had held that the "Commissioners of election in said county have failed to act as required by law in that the names of persons

disqualified from voting by reason of being delinquent for poll tax have been permitted to remain on the general election books of the several election districts, and other names who were qualified have not been placed thereon, and for other reasons,'' the adjudication having been made in explanation of why a new registration of voters had been ordered in the county on September 7, 1948; and (2) whether the use of the then new poll books, made up from the new registration book which was not made effective by an order of the board of supervisors until May 10, 1950, less than four months before the election on July 25, 1950, and on the basis of which new poll books 2,711 persons voted in the election, had the effect of invalidating the same; and (3) whether or not any person who was duly registered on the old registration books but not on the new and was otherwise qualified to vote was entitled to vote in the election, in view of the prior adjudication of the board of supervisors that the old registration books, which had been in use since 1932, had become in such confusion that a new registration was necessary to determine correctly the names of the qualified electors.

 ██ On the first issue above stated, there is no adjudication by the board that the commissioners of election had failed to act in the matter of holding an election so as to charge the president of the board of supervisors with the duty of having the official ballot printed and distributed, and so as to require the managers of election to make returns to the board of supervisors which should then canvass the returns, etc., but rather the adjudication of the board was that the commissioners of election had failed to act in the matter of eliminating disqualified persons from the poll books and in failing to place other names thereon who were duly qualified. This adjudication was the basis for ordering the new registration on September 7, 1948, and not of a failure to act within the meaning of Section 3283, Code of 1942. We are therefore of the opinion that the contention that

the election should have been held by the board of supervisors instead of the commissioners of election is not well-taken.

On the second issue above stated, the argument is that in the order for a new registration on September 7, 1948, the board of supervisors failed to designate a date in the future when such a new registration book should become effective, and that not until in April 1950 did the board adopt an order declaring that the new registration book was to become effective on and after May 10, 1950, and that since the election was held less than four months from the effective date of the new registration book, that all persons whose names were copied from the new registration book and placed on the new poll books were not qualified to vote in the election on July 25, 1950, even though they had registered on the new registration book for at least four months prior to said election.

The proof discloses on this issue that from and after the new registration was ordered on September 7, 1948, all persons were denied the right to register on the old registration book. On April 4, 1950, the board of supervisors entered an order reciting the fact that in its order of September 7, 1948, the board did not at that time fix a date upon which the new registration book would become effective, and it, therefore, ordered and adjudged that May 10, 1950, be fixed as the day upon which the same should become effective, as aforesaid.

On May 1, 1950, petitions were filed with the board asking for the election, and the board adjudicated that according to the old registration book there were 4,554 qualified electors in the county and that 1,536 of them had signed the petitions; and that according to the new registration book there were 4,187 qualified electors in the county, and 1,544 of those whose names appeared in the new registration book had signed said petitions. The order of the board further recited that according to the old and new registration books there were 4,766 qualified electors in the county and that 1,558 of them had signed

the petitions, it appearing that most of the names on the old book are also on the new one, but that nevertheless more than 20% of all the qualified electors of the county had signed the petitions. The board, therefore, ordered the election to be held by the commissioners of election. as provided by law.

In the election which resulted from this order, it appears, from the proof on the trial which included the adjudication of the board of supervisors as to the result of the election and as to who had voted therein, that two poll book lists of voters, one taken from the old registration book of the names of persons who had not registered in the new one, and one taken from the new registration book of the names of those who had registered thereon more than four months prior to the order directing the election to be held, which was adopted in June 1950, were used for determining who was entitled to vote.

It further appears from the proof, including the order of the board of supervisors in adjudicating the result of the election, that, according to the old and new poll books of the county, the total number of 2,808 qualified electors had voted in the election and that 1,814 of them had voted for the proposition submitted and that 994 had voted against the proposition, as hereinbefore stated; that by virtue of the old poll books 2,429 qualified electors voted in the election and that by virtue of the new poll book 2,711 qualified electors had voted in the election, due to the fact that so many names appeared both on the old and new books.

It was further shown by the adjudication of the board and the proof at the trial that no one was permitted to vote in the election who had not been registered for at least four months prior thereto, as hereinbefore stated, and that all of those voting in the election met the other qualifications required by the Constitution and laws of this State.

Since only 994 votes were cast against the proposition submitted in the election, they constituted a minority of

the voters without regard to whether the old registration and poll books had been used to determine the result, or whether the new ones had been used, and also without regard to the fact that many of them were registered on both the old and new books, since none of them were permitted to vote twice in the election, and no person's vote was counted who had not registered for at least four months on one or the other of said books, or on both sets of them.

We are of the opinion that since a citizen of the county who has been registered for at least four months before the election and possesses the other qualifications required by law for voting is guaranteed the right to vote under the Constitution, the fact that his name may appear only on the new registration book, the effective date of which was fixed to begin less than four months of the election, cannot deprive him of the right to vote if registered thereon for four months, where he has been denied the right to register on the old book from and after the date the new registration was ordered, more than a year and a half prior to the election.

It is further contended by the appellant in this connection that there was an interval of four months following the effective date of the new registration books on May 10, 1950, when no one in the county was qualified to vote in an election, since the new registration book was not official prior to said date and that when it became official the old registration book could no longer be used. If the Court should so hold, the decision would place it within the power of boards of supervisors to order a new registration within four months of the primary or general election and provide that the same should become effective at some date during the four month period prior to such election and thereby disqualify all of the voters in the county to participate in the election of new officials or on other matters of public interest—an intolerable result. We do not think the board of supervisors would have either the right or power to do this, and in the

instant case it is manifest that the board had no design to do so.

Counsel for the appellant frankly concedes that he finds no court decision to support the alleged invalidity of the election on either of the three grounds set forth in the second paragraph of this opinion, but he relies upon Sections 3283, 3221, 3222 to sustain the first contention, and as to the second and third contentions he asks that we now hold that it was illegal to permit the use of the poll books made up of names on the new registration book, since the same did not become effective at least four months prior to the election, and that we hold that the old registration book was unavailable to the commissioners of election since the board of supervisors had adjudicated that the same had become in such confusion that a new registration was necessary to determine correctly the names of the qualified electors.

 ██ We are of the opinion that while the new registration did not become effective until the date fixed therefor, that is to say on May 10, 1950, it then became effective as to all elections thereafter held, whether within four months or not, as to all persons who had registered thereon for at least four months prior to the election. There is no statute that prohibits our so holding and we think that a due regard for the constitutional rights of the citizen makes it imperative that we do so.

 ██ As to the third issue stated in paragraph two of this opinion, we think that the old registration book remained in full force and effect until the new one became effective and that persons whose names appeared thereon and who had been registered for at least four months prior to the election had the right to vote, since they could not have registered on the new registration book after the effective date thereof on May 10, 1950, for a full period of four months prior to the election on July 25, 1950. No vote of any particular individual cast in the election is challenged except as included in the general

challenge of them all on the ground of not being legally registered. ██ ██ Moreover, as to both the second amd third contentions on this appeal hereinbefore stated, we do not think that whether the old registration book had been used in preference to the new one or the new in preference to the old, or whether the commissioners of election used them both, had the effect of changing the ultimate result of the election in the instant case. We are therefore of the opinion that the judgment of the circuit court in affirming the final order of the board of supervisors should be affirmed.

Affirmed.

**Lee, J.,** took no part in the decision of this case.